## DOERNBECHER MFG. CO. et al. v. COMMISSIONER OF INTERNAL REVENUE.*

### No. 7777.

Circuit Court of Appeals, Ninth Circuit.

Dec. 13, 1935.

O. A. Neal, of Portland, Or., for petitioners.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Louise Foster, Sp. Assts. to the Atty. Gen., for respondent.

Before WILBUR, MATHEWS, and HANEY, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from a decision of the Board of Tax Appeals sustaining the proposed deficiency assessment of income tax to the Doernbecher Manufacturing Company, a corporation hereinafter referred to as the petitioner, and St. Johns Investment Company for the years 1922 to 1930, inclusive. There are two points involved on the appeal. The first relates to each of the taxable years, and is as to whether or not the salaries which were paid by the corporation to its officers were ordinary and necessary expenses to be deducted, from the gross income of the petitioner in fixing the net income of the corporation subject to tax. The right to such deduction depends upon whether or not the salaries fixed and paid were reasonable compensation for the services rendered. The question is one of fact to be determined by the Board of Tax Appeals. Twin City Tile & Marble Co. v. Comm'r (C.C.A.) 32 F.(2d) 229; Am-Plus Storage Battery Co. v. Comm'r (C.C.A.) 35 F.(2d) 167; Marble & Shattuck Chair Co. v. Comm'r (C.C.A.) 39 F.(2d) 393; Tumwater Lbr.

*Rehearing denied Jan. 27, 1936.

Mills Co. v. Comm'r (C.C.A.) 65 F.(2d) 675. The nearest approach to a finding upon that ultimate fact is contained in the opinion of the Board, as follows: "The evidence abundantly establishes that the several stockholders performed valuable services for petitioner, that each was skilled in his field of duty, and that they all served petitioner loyally and whole-heartedly. But it does not establish to our satisfaction that they were entitled to any greater sums than allowed by the respondent as reasonable compensation. We accordingly sustain the respondent on the salary issue for all years."

This is not a finding of the ultimate fact. We have recently held that the proper course for this court in the absence of such a finding is to remand the case to the Board of Tax Appeals, with directions to make a finding upon the ultimate fact involved. This we propose hereafter to do. Anderson v. Comm'r (C.C.A.) 78 F. (2d) 636; Belridge Oil Co. v. Helvering (C.C.A.) 69 F.(2d) 432. The Supreme Court has recently approved this course and stated the relative duties of the Board of Tax Appeals and of the Circuit Court of Appeals as to findings of fact in Helvering v. Rankin, 295 U.S. 123, 131, 55 S.Ct. 732, 736, 79 L.Ed. 1343, as follows: "Fourth. The Court of Appeals is without power, on review of proceedings of the Board of Tax Appeals, to make any findings of fact. 'The Board of Tax Appeals is not a court. It is an executive or administrative board, upon the decision of which the parties are given an opportunity to base a petition for review to the courts after the administrative inquiry of the Board has been had and decided.' Old Colony Trust Co. v. Commissioner of Internal Revenue, 279 U.S. 716, 725, 49 S.Ct. 499, 502, 73 L.Ed. 918. The function of the court is to decide whether the correct rule of law was applied to the facts found; and whether there was substantial evidence before the Board to support the findings made. See Phillips v. Commissioner of Internal Revenue, 283 U. S. 589, 599, 600, 51 S.Ct. 608, 75 L.Ed. 1289; Burnet v. Leininger, 285 U.S. 136, 138, 52 S.Ct. 345, 76 L.Ed. 665; Old Mission Portland Cement Co. v. Helvering, 293 U.S. 289, 294, 55 S.Ct. 158, 79 L.Ed. 367. Unless the finding of the Board involves a mixed question of law and fact, the court may not properly substitute its own judgment for that of the Board. If the Board has failed to make an essential finding and the record on review is insufficient to provide the basis for a final determination, the proper procedure is to remand the case for further proceedings before the Board. Compare Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L. Ed. 623; Murphy Oil Co. v. Burnet, 287 U.S. 299, 308, 53 S.Ct. 161, 77 L.Ed. 318. And the same procedure is appropriate even when the findings omitted by the Board might be supplied from examination of the record."

The second point is whether or not the Doernbecher Manufacturing Company was affiliated with the Furniture Corporation of America, Limited, hereinafter called the Furniture Corporation, during the taxable year 1930, or any part thereof. The Board of Tax Appeals found that the two corporations were not affiliated at any time during that year. The petitioner challenges that finding. The Furniture Corporation owned 10,844½ shares of petitioner's stock. Petitioner contends that 9,152½ shares of its stock had been extinguished by purchase by it, and consequently that the shares purchased by the Furniture Corporation constituted more than 95 per cent. of its stock. The finding of the Board is conclusive if there is substantial evidence to support it. The petitioner concedes that if this 9,152½ shares are not "treasury stock" the decision of the Board of Tax Appeals is correct. The petitioner relies upon a provision of its contracts to purchase the 9,-152½ shares of stock, which is as follows: "It is hereby expressly agreed that until first party shall have foreclosed on said stock, as herein provided for, that said first party shall have no right to vote or draw dividends on said stock, or any part thereof, either in person or by proxy, it being expressly understood and agreed that the purchase price when paid is in full payment for said stock as of the date hereof." Consequently, it is argued that this stock having been deprived of its voting and dividend privileges is expressly excluded from the stock to be considered in arriving at the 95 per cent. required by section 141 (d) of the Revenue Act of 1928 (26 U.S. C.A. § 141 note) by that portion of the section which we quote: "As used in this subsection the term 'stock' does not include nonvoting stock which is limited and preferred as to dividends." Rev.Act 1928, § 141 (d) (2), 26 U.S.C.A. § 141 note. The petitioner cites in support of this conclusion the decision in Comm'r v.

Shillito Realty Co. (C.C.A.) 39 F.(2d) 830, 69 A.L.R. 1266, interpreting section 240 of the Revenue Act of 1918, 40 Stat. 1057, 1081; the corresponding section of that act. See, also, Atlantic City Elec. Co. v. Comm'r, 288 U.S. 152, 53 S.Ct. 383, 77 L.Ed. 667, affirming same case (C.C.A.) 57 F.(2d) 186. The appellant contends that under section 240 (c), Rev.Act 1926, 44 Stat. 9, 46, section 141 (d) (2), Rev.Act 1928 (26 U.S.C.A. § 141 note), and the above-mentioned section of the Revenue Act of 1918 (section 240), the term "stock" means stock entitled to vote, and not to "treasury stock" or to stock deprived of its dividend rights. The Revenue Act of 1918 which was construed and applied in Comm'r v. Shillito Realty Co., supra, included stock which was owned or "controlled" by the same interests in determining the question of affiliation (Revenue Act 1918, § 240 (b), 40 Stat. 1057, 1082). But subsequent acts eliminated the feature of control. Rev. Act 1924, § 240 (c), 43 Stat. 288, 26 U.S. C.A. § 993 and note; Revenue Act 1926, § 240 (c), 44 Stat. 46. It appears from the evidence that B. P. John's stock, amounting to 8,135½ shares, was in escrow with the United States National Bank as security for the payment of the purchase price; that it had never been delivered to the petitioner for cancellation or to be held as treasury stock. The conditional sales contracts under which the petitioner was to acquire the 9,152½ shares of stock provided that in case of default by the petitioner the vendors could foreclose the agreements in equity and sell the stock. All this is entirely inconsistent with the idea that the stock had become treasury stock.

The provision of the agreement for the sale of the stock above referred to with reference to the right of the seller to vote or draw dividends before foreclosure, whatever its effect, did not change the classification of the stock to "non voting stock which is limited and preferred as to dividends." Section 141 (d) (2), Rev.Act 1928, 26 U.S.C.A. § 141 note, supra. It was still voting stock even if the right of the seller to vote it was temporarily suspended. It should be added that John's agreement to sell the stock to the petitioner was subject to his agreement to purchase the same and to pay therefor, and that his interest in the stock he sold to the petitioner was already hypothecated to secure to the original sellers the purchase price due from him to them which was as-

sumed by the petitioner by virtue of its contract with John.

The decision of the Board of Tax Appeals on the question of the affiliation of these corporations is affirmed, and the case is remanded to the Board of Tax Appeals for an express finding as to the reasonable allowance to be made for compensation of the officers of the petitioner as its ordinary and necessary expenses. After making such allowance the Board will fix the tax in accordance with its conclusion upon that subject and in accordance with its finding that there is no affiliation between the Furniture Corporation of America, Limited, and the Doernbecher Manufacturing Company during the year 1930, as heretofore held by them.