**VON'S INV. CO., Limited, v. COMMIS-SIONER OF INTERNAL REVENUE.**

**No. 8154.**

Circuit Court of Appeals, Ninth Circuit.

Nov. 24, 1937.

Thomas R. Dempsey and A. Calder Mackay, both of Los Angeles, Cal., for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, Joseph M.

Jones, and Harry Marselli, Sp. Assts. to Atty. Gen., for respondent.

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

MATHEWS, Circuit Judge.

Petitioner, Von's Investment Company, Limited, a California corporation, seeks reversal of a decision of the Board of Tax Appeals which determined that there was a deficiency of $49,711.35 in respect of petitioner's income tax for the fiscal year ended April 30, 1930.

The sole question is: What was the proper cost basis for determining petitioner's gain or loss from the disposition of 23,015 shares of stock of Von's, Incorporated, a Delaware corporation (hereafter called Von's), which petitioner acquired and disposed of in said fiscal year?

Facts stipulated by the parties and found by the Board are as follows:

Von's was organized in 1926 and, on January 9, 1929, had issued and outstanding 40,000 shares of stock, of which Charles Von Der Ahe owned 23,015 and Linda Von Der Ahe owned 7,426. The cost to Charles Von Der Ahe of his 23,015 shares was $86,723.18. The cost to Linda Von Der Ahe of her 7,426 shares was $27,412.

On January 9, 1929, Charles Von Der Ahe and Merrill, Lynch & Co. made a contract (hereafter called the Merrill contract), which was amended on March 27, 1929. By the Merrill contract, as amended, it was agreed that Charles Von Der Ahe would cause all the assets of Von's to be transferred to MacMarr Stores, Incorporated, a Maryland corporation (hereafter called MacMarr), in exchange for 11,000 shares of MacMarr stock and $715,000 in cash, subject to certain deductions. Thus, by the Merrill contract, the parties thereto agreed to bring about what section 112(i) (1) of the Revenue Act of 1928, 45 Stat. 816, 818 (26 U.S.C.A. § 112 and note), declares to be a "reorganization."[1]

On March 4, 1929, Linda Von Der Ahe caused petitioner to be organized. Petitioner had only one class of stock, namely, common stock. On May 31, 1929, Linda Von Der Ahe transferred her 7,426 shares of Von's stock to petitioner in exchange for 743 shares of petitioner's stock. Immediately thereafter Linda Von Der Ahe owned all of petitioner's stock and was, therefore, in control of petitioner. Revenue Act of 1928, § 112(j), 45 Stat. 816, 818 (26 U.S.C.A. § 112 and note).[2] Consequently, no gain or loss was recognized in that transaction, and the cost to petitioner of the 7,426 shares of Von's stock was the same as it was to Linda Von Der Ahe, namely, $27,412. Revenue Act of 1928, §§ 112(b) (5), 113(a) (8), 45 Stat. 816, 818, 820, infra (26 U.S.C.A. §§ 112 and note, 113 note).

On April 15, 1929, Charles Von Der Ahe caused Grocers Securities Company, a California corporation (hereafter called Grocers), to be organized. Grocers had only one class of stock, namely, common stock. On May 3, 1929, Charles Von Der Ahe transferred his 23,015 shares of Von's stock to Grocers in exchange for 2,303 shares of Grocers' stock. Immediately thereafter Charles Von Der Ahe owned all of Grocers' stock and was, therefore, in control of Grocers. Consequently, no gain or loss was recognized in that transaction, and the cost to Grocers of the 23,015 shares of Von's stock was the same as it was to Charles Von Der Ahe, namely, $86,723.18.

On July 5, 1929, Grocers transferred its 23,015 shares of Von's stock to petitioner in exchange for 2,303 shares of petitioner's stock. Immediately thereafter Grocers owned 75.06 per cent. and Linda Von Der Ahe owned 24.04 per cent. of petitioner's stock and, therefore, they together were in control of petitioner, but Grocers alone never had such control. Respondent, the Commissioner of Internal Revenue, treated the transfer from Grocers to petitioner as a transaction in which no gain or loss was recognized.

On October 15, 1929, Von's transferred all its assets to MacMarr and received in exchange therefor 11,000 shares of MacMarr stock and $577,317.92 in cash, thereby completing and putting into effect the reorganization provided for in the Merrill contract.

---

[1] Section 112(i)(1) provides: "The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of * * * substantially all the properties of another corporation)."

[2] Section 112(j) provides: "As used in this section the term 'control' means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation."

Thereafter, on a date which the record does not disclose, Von's was dissolved, and its assets (consisting of stock and cash received from MacMarr) were distributed to its stockholders. The distribution was completed prior to April 30, 1930. In this distribution petitioner, as owner and holder of 30,441 shares of Von's stock, received cash in the sum of $439,360.39 and Mac-Marr stock of the market value of $326,-479.73.

In its income tax return for the fiscal year ended April 30, 1930, petitioner claimed that the cost to it of the 23,015 shares of Von's stock which it acquired from Grocers was their fair market value, namely, $506,330. Respondent determined that the cost of said shares to petitioner was the same as it was to Grocers, which, in turn, was the same as it was to Charles Von Der Ahe, namely, $86,723.18. The Board upheld respondent's determination.

Section 112(b) (5) of the Revenue Act of 1928 provides: "No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange."

Section 113(a) (8) provides: "If the property was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in section 112(b) (5) * * * then the basis[3] shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made."

In this case, property (30,441 shares of Von's stock) was transferred to a corporation (petitioner) by two persons (Linda Von Der Ahe and Grocers)[4] solely in exchange for stock of the corporation, and

was acquired after December 31, 1920, by the corporation by the issuance of its stock. The amount of stock received by each person was substantially in proportion to his interest in the property prior to the exchange. This exchange was effected by two transfers—a transfer of 7,426 shares by Linda Von Der Ahe on May 31, 1929, and a transfer of 23,015 shares by Grocers on July 5, 1929. Immediately after the first transfer, Linda Von Der Ahe was in control of the corporation. Immediately after the second transfer, Linda Von Der Ahe and Grocers were in control of the corporation, but Grocers alone was never in control.

The Board treated the two transfers as constituting a single transaction and held this to be a transaction described in section 112(b) (5), and within the provisions of section 113(a) (8). It accordingly held that the cost to petitioner of its 30,441 shares of Von's stock—the 7,426 shares acquired from Linda Von Der Ahe and the 23,015 shares acquired from Grocers—was the same as it was to petitioner's transferors.

█ Petitioner contends that the transfer by Linda Von Der Ahe and the transfer by Grocers were two transactions, the first of which was, and the second was not, a transaction described in section 112(b) (5), and that to treat them both as one transaction was error, because the transfers were made by different persons and were not simultaneous. This fact is not controlling. Two transfers by different persons may constitute a single transaction, within the provisions of section 112(b) (5) and section 113(a) (8),[5] and may do so, though made on different dates.

██ Whether the two transfers here involved should or should not be treated as one transaction depends upon the intent and purpose with which they were made. If, as seems likely, both transfers were made in furtherance of, and for the purpose of executing and putting into effect, the plan of reorganization embodied in the Merrill contract, they should, we think, be treated as one transaction and held to be a transaction described in section 112(b)

[3] Meaning the cost basis for determining the corporation's gain or loss from the sale or other disposition of such property.

[4] A corporation is a person. Revenue Act of 1928, § 701(a)(1), 45 Stat. 878 (26 U.S.C.A. § 1696 and note).

[5] See American Compress & Warehouse Co. v. Bender (C.C.A.5) 70 F.2d 655, 657, which involved the corresponding sections (sections 203(b)(4) and 204(a)(8) of the Revenue Act of 1924, 43 Stat. 256, 258, 259.

(5), notwithstanding they were made by different persons and were separated by an interval of five weeks.

As to the intent or purpose with which these transfers were made, the Board made no finding. Such a finding is necessary to a proper decision of the case, and should be made by the Board, not by this court. In reviewing decisions of the Board, we are not authorized to make findings of fact. Our review is limited to questions of law. Diller v. Commissioner (C.C.A.9) 91 F.(2d) 194, 195; Fulton Oil Co. v. Commissioner (C.C.A.9) 81 F.(2d) 330, 332; Eaton v. Commissioner (C.C.A.9) 81 F.(2d) 332, 334; Doernbecher Mfg. Co. v. Commissioner (C.C.A.9) 80 F.(2d) 573, 574; Anderson v. Commissioner (C.C.A.9) 78 F.(2d) 636, 637; Belridge Oil Co. v. Helvering, Commissioner (C.C.A.9) 69 F.(2d) 432, 433.

The decision is reversed, and the case is remanded to the Board, with directions (1) to make findings as to the intent and purpose with which the transfer by Linda Von Der Ahe to petitioner and the transfer by Grocers to petitioner were made and, specifically, as to whether or not both transfers were made in furtherance of, and for the purpose of executing and putting into effect, the plan of reorganization embodied in the Merrill contract, such findings to be in addition to those heretofore made; and thereupon (2) to render such decision as the facts may warrant. To enable it to make such additional findings, the Board may, if deemed proper, take further evidence or, if tendered, a stipulation by the parties.

Reversed and remanded.