**E. WAGNER & SON, Inc., v. COMMISSION-ER OF INTERNAL REVENUE.**

No. 8415.

Circuit Court of Appeals, Ninth Circuit.

Dec. 22, 1937.

MATHEWS, Circuit Judge, dissenting.

Elder & Hill, Andrew G. Elder, and Cyril D. Hill, all of Seattle, Wash., for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, Fred Youngman, and Louise Foster, Sp. Assts. to Atty. Gen., for respondent.

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

Petitioner has filed a petition to review a decision of the Board of Tax Appeals, which redetermined a deficiency of $1,333.-44 in the income tax paid by petitioner for the year 1929.

Petitioner is a Washington corporation, the stock of which was owned in equal proportions by E. Wagner and his son, Otto H. Wagner. The former was president, and the latter was secretary and treasurer and general manager. Both Wagners devoted their entire time to the management of petitioner's business.

The two Wagners, as trustees of the petitioner, held a meeting in June, 1929, at which they decided that each of them should receive an annual salary of $10,000 for the year 1929, and subsequent years. They held another meeting in September, 1929, at which they decided that each of them should receive a bonus of $3,000 for the services performed by them during the year 1929.

Both Wagners made loans to petitioner, and left with petitioner parts of their salaries, prior to and during the year 1929.

In closing petitioner's books for the year 1929, which books were kept on an accrual basis, entries were made in those books crediting each of the Wagners the sum of $13,000 for salaries. Entries were also made, crediting E. Wagner the sum of $500, and crediting Otto H. Wagner the sum of $2,250, for "interest accrued on loans from officers." In petitioner's return of income for the year 1929, it claimed a deduction of $26,000 for "compensation to officers," and claimed a deduction for interest paid or accrued in the sum of $4,759.53, which included the two items of interest mentioned above in the sum of $2,750.

Respondent audited the return, disallowed the sum of $20,000 for officers' salaries, and disallowed the sum of $2,750 for interest because he found that such interest had not accrued within the taxable year. He determined a deficiency of $2,543.44 and assessed a 5 per cent. penalty in the sum of $127.17. Thereupon petitioner petitioned the Board of Tax Appeals for a redetermination of the deficiency.

The Board found that "A reasonable allowance for salaries or other compensation for personal services actually rendered to the petitioner during the year 1929 is $4,000 in the case of E. Wagner and $10,000 in the case of Otto H. Wagner." It further found that "The petitioner has failed to prove that it is entitled to any larger deduction for interest than the amount allowed by the Commissioner." The Board's decision redetermined the deficiency to be $1,333.44, and held that no penalty should be assessed. Petitioner then filed its petition in this court for review of that decision.

Section 23 of the Revenue Act of 1928,[1] applicable here, provides, in part, as follows:

"In computing net income there shall be allowed as deductions:

"(a) All the ordinary and necessary expenses paid or incurred during the tax-

able year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *

"(b) All interest paid or accrued within the taxable year on indebtedness."

Article 126 of Treasury Regulations 74, promulgated under the Revenue Act of 1928, provides in part:

"Among the ordinary and necessary expenses paid or incurred in carrying on any trade or business may be included a reasonable allowance for salaries or other compensation for personal services actually rendered. The test of deductibility in the case of compensation payments is whether they are reasonable and are in fact payments purely for services. This test and its practical application may be further stated and illustrated as follows:

"(1) Any amount paid in the form of compensation, but not in fact as the purchase price of services, is not deductible. (a) An ostensible salary paid by a corporation may be a distribution of a dividend on stock. * * *

"(3) In any event the allowance for the compensation paid may not exceed what is reasonable in all the circumstances. It is in general just to assume that reasonable and true compensation is only such amount as would ordinarily be paid for like services by like enterprises in like circumstances. * * * *"

Article 128 of the same regulations provides in part:

"Bonuses to employees will constitute allowable deductions from gross income when such payments are made in good faith and as additional compensation for the services actually rendered by the employees, provided such payments, when added to the stipulated salaries, do not exceed a reasonable compensation for the services rendered. * * *"

Petitioner contends that the Board's finding that each of the Wagners was entitled to less than $13,000 is unsupported by the evidence.

The statute requires that an allowance for salaries or other compensation must be reasonable, before the taxpayer is entitled to a deduction therefor from gross income. Whether or not such salary or other compensation is reasonable is a question of fact. Sunset Scavenger Co. v. Commissioner, 9 Cir., 84 F.2d 453, 454; General Water Heater Corp. v. Commissioner, 9 Cir., 42 F.2d 419, 420. Generally, "reasonable and true compensation is only such amount as would ordinarily be paid for like services by like enterprises in like circumstances." Article 126 (3), supra. The burden of establishing "reasonableness" of the salaries and other compensation was on petitioner. Botany Worsted Mills v. United States, 278 U.S. 282, 289, 49 S.Ct. 129, 132, 73 L.Ed. 379. The finding of the Board on the question as to what amount is reasonable to be paid as salaries or other compensation is conclusive if supported by any substantial evidence. Sunset Scavenger Co. v. Commissioner, supra, 9 Cir., 84 F.2d 453, 454; General Water Heater Corp. v. Commissioner, supra, 9 Cir., 42 F.2d 419, 420.

The evidence before the Board shows that E. Wagner organized petitioner in 1924, and conveyed to it all his property, which included a small circular sawmill and "a kind of a home made box factory, worth approximately $20,000." Both Wagners left parts of their salaries with, and made advances to petitioner during the following years to improve the mill. Petitioner's business improved during the following years. The following table shows the gross sales, and the compensation received by each of the Wagners:

| Year | Gross Sales | Compensation |
|------|-------------|--------------|
| 1924 | $ 20,101.34 | $ 2,000 |
| 1925 | 50,650.17 | 2,000 |
| 1926 | 94,197.21 | 4,000 |
| 1927 | 95,484.67 | 2,000 |
| 1928 | 143,880.41 | 2,000 |
| 1929 | 221,723.63 | 13,000 |

E. Wagner testified before the Board that the salaries were smaller prior to the year 1929 because "if we had drawn any more it would have busted the company, and it couldn't exist at all." Otto H. Wagner testified that "had we drawn a salary such as the work we did justified, we would have eventually embarrassed our company so it could not have operated."

On June 1, 1929, the operation of the business of petitioner necessitated employment of men working in two shifts. Otto H. Wagner testified that he worked from twelve to twenty hours on these shifts; that he made timber cruises, and applications to the state of Washington for the purchase of timber; that he "took general logging crews and operated the logging operations, laid out the logging work, cutting

timber," and bringing the timber into the sawmill; that he had supervision of the sawmill, box factory, and lumber yard operations; that he handled "the entire sales end of the business in Okanogan County"; and that he went to Wenatchee, and consulted E. Wagner regarding real estate operations, and sale of box shooks and lumber at Wenatchee. He further testified that in his opinion the sum of $13,000 would be a reasonable salary for the services performed by him during the year 1929.

With respect to the duties of E. Wagner, Otto H. Wagner testified that the former lived in Wenatchee; that one of his duties was to sell box shooks and lumber manufactured at the Okanogan plant; that he built houses and cabins on unprofitable orchard property, in order to make available and salable town lots and tracts; that he made frequent trips to the office at Okanogan to confer with Otto H. Wagner concerning such real estate, logging, sawmill operations, and sales of petitioner's products; and that due to a breakdown in health in October, 1929, E. Wagner did no work during the remainder of that year.

Otto H. Wagner further testified that the superintendent, who had charge of the actual sawmill operation and box factory, received a salary of $3,600 in the year 1929, a bonus of $600 at the end of the year, and a contract to get an interest in the mill property amounting to about $3,000. The total of these sums is approximately $7,200.

E. Wagner testified that his duties were substantially as related by Otto H. Wagner. In addition, E. Wagner testified that he made plans and specifications for houses, sold tracts, found timber to buy, started cutters of the timber; that he had earned between $40,000 and $50,000 a year from 1906 until 1917; that for the work he did, $13,000 was underpay.

Petitioner contends that salaries voted by corporate directors are presumed reasonable and proper, and cites Ox Fibre Brush Co. v. Blair, 4 Cir., 32 F.2d 42, 45, 68 A.L.R. 696, affirmed Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 50 S.Ct. 273, 74 L.Ed. 733; Toledo Grain & Milling Co. v. Commissioner, 6 Cir., 62 F.2d 171, 172. Assuming, without deciding, that such rule is correct, it is evident that the evidence overcame the effect of the presumption.

Petitioner contends also that the Board fixed an arbitrary value for the services of the Wagners, and that the Board should not have disregarded the testimony that $13,000 was reasonable compensation. The Board was not, we think, required to believe the testimony that $13,000 was reasonable. Sunset Scavenger Co. v. Commissioner, supra, 9 Cir., 84 F.2d 453. Petitioner introduced no evidence to show the salaries paid by other concerns in similar circumstances. Although petitioner shows the amount of its sales for the years prior to 1929, it does not show the amount of profits for those years. Obviously, a large amount of sales does not alone justify a particular salary, for those sales may have been at a figure below cost. The tax return for the year 1929 showed a net income of $12,670.-05. It is admitted that petitioner had not paid any dividends from the time of its organization. Petitioner contends that the evidence would support a finding that a reasonable salary would be $13,000. If that be true, then there is substantial evidence to sustain the Board's findings that a smaller sum was reasonable. We believe the findings of the Board are sustained by substantial evidence.

Although petitioner had claimed the sum of $2,750 for interest on advances by the Wagners, and their undrawn salaries, the figures shown by the computation, which it submitted in evidence vary from the $2,750 figure mentioned. Under this computation the interest was shown to be:

|  | @6% | @10% |
|---|---|---|
| Interest for 1929 on advances made and salaries undrawn prior to 1929 | $1,228.69 | $2,047.82 |
| Interest for 1929 on salries and bonus undrawn in 1929 | 515.04 | 858.40 |
|  | $1,743.73 | $2,906.22 |

Both the Wagners testified that the maximum bank credit which petitioner had was for pay rolls in the sum of $15,000 upon which the interest rate was 10 per cent. However, in 1929 petitioner was able to borrow some money at an interest rate of 8 per cent. Otto H. Wagner testified that petitioner was unable to borrow any money for capital improvements.

Regarding an agreement of petitioner to pay interest, Otto H. Wagner testified:

"With reference to the matter of the allowance of interest on advances made by myself and my father to the corporation and on undrawn salaries, I don't believe

**820**

there ever was a meeting of the trustees of the corporation. The matter of interest was first decided on my trip to Seattle to See Mr. Carne for the closing of the books for 1929, probably some time in April, 1930."

He later testified:

"* * * The subject of interest never came up during our discussions, that is, between E. Wagner and myself. There was no agreement of the corporation to pay interest."

Regarding the same subject, E. Wagner testified:

"* * * With reference to any agreement that the corporation was to pay me and my son interest on money that belonged to me and my son and had left with the company, we figured we were entitled to interest because we were paying interest to the banks that we borrowed money from. Relative to an agreement or understanding, I suppose you understand how a father and son will talk it over."

The Board found that the Wagners did not "as individuals enter into any agreement with the petitioner respecting the allowance or payment of interest thereon." Regarding the deduction for interest, the Board said:

"* * * Interest at 6 per cent on loans and undrawn salaries for prior years may have been included by the Commissioner in the deduction of $2,009.53 which he allowed. Interest at 6 per cent on loans and undrawn salaries of prior years would be a proper deduction. But interest at a higher rate would not be proper in the absence of an express agreement to pay some certain rate. The petitioner claims also some interest on the salaries and bonuses for the current year, but the evidence does not indicate that any part of the salaries or bonuses was payable prior to the end of the year. The petitioner has failed to prove that it is entitled to any larger deduction for interest than the amount allowed by the Commissioner."

■ There is no evidence as to when the salaries and bonuses for the year 1929 were payable. Petitioner could not be required to pay interest on money which it did not owe.

■ The burden is on the taxpayer to show to the Board that the Commissioner's determination was erroneous. The taxpayer may carry his burden without showing the correct amount of tax. Helvering v.

Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623. The question before us is not whether petitioner did or did not prove the facts from which the correct amount of tax could have been found, but whether petitioner showed that respondent's determination was erroneous. It is the same question present in Helvering v. Gowran, 58 S.Ct. 154, 158, 82 L.Ed. ——, decided by the Supreme Court December 6, 1937, where the court said:

"The taxpayer sought review of the Board's decision by the Court of Appeals. The ultimate question before that court was whether, upon the facts stipulated, the Board had erred in affirming the Commissioner's determination that the additional taxes were due."

■ With respect to interest on the advances and undrawn salaries prior to 1929, it appears that the Commissioner allowed an interest deduction of $2,009.53. It does not appear what that amount of interest was for. Inasmuch as the Commissioner's determination was presumptively correct, the Board, we believe, rightly presumed, in the absence of proof to the contrary, that the $2,009.53 included any interest due the Wagners.

Affirmed.

MATHEWS, Circuit Judge (dissenting).

The Board of Tax Appeals had two questions before it. The first was: What salaries or compensation would have been reasonable salaries or compensation for personal services actually rendered by petitioner's officers, E. Wagner and Otto H. Wagner, in 1929?

The Board found that reasonable salaries or compensation for such services would have been $4,000 and $10,000, respectively. I agree with my associates that this finding is supported by substantial evidence and is, therefore, conclusive.

The other question before the Board was: What interest accrued in 1929 on indebtedness owing by petitioner?

This was a question of fact, as to which the Board should have made, but did not make, a specific finding. Such a finding is necessary to a decision and should be made by the Board, not by this court. In reviewing decisions of the Board, we are not authorized to make findings of fact. Our review is limited to questions of law. Belridge Oil Co. v. Helvering, 9 Cir., 69

F.2d 432, 433; Anderson v. Commissioner, 9 Cir., 78 F.2d 636, 637; Doernbecher Mfg. Co. v. Commissioner, 9 Cir., 80 F.2d 573, 574; Eaton v. Commissioner, 9 Cir., 81 F. 2d 332, 334; Fulton Oil Co. v. Commissioner, 9 Cir., 81 F.2d 330, 332; Diller v. Commissioner, 9 Cir., 91 F.2d 194, 195; Von's Investment Co. v. Commissioner, 9 Cir., 92 F.2d 861.

The Board's statement that "petitioner has failed to prove that it is entitled to any larger deduction for interest than the amount allowed by the Commissioner" is not a finding of fact, nor does the record warrant any such statement. The evidence establishes conclusively, I think, that petitioner was entitled to a larger deduction for interest than the Commissioner allowed. The fact, if it be a fact, that petitioner did not show the precise amount of such allowable deduction does not excuse the Board's failure to make a finding on this question, or justify its conclusion that the Commissioner's determination must, therefore, be sustained. Compare Helvering v. Taylor, 293 U.S. 507, 514, 55 S.Ct. 287, 290, 79 L.Ed. 623.

The decision should be reversed and the case should be remanded to the Board, with directions to find specifically what interest accrued in 1929 on indebtedness owing by petitioner, and thereupon to render such decision as the facts may warrant. To enable it to make such finding, the Board should be authorized to take further evidence or, if tendered, a stipulation by the parties.